UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

KINGSWAY FINANCIAL SERVICES,          :
INC.,
                                      :

                    Plaintiff,        :

                                      :    03 Civ. 5560 (RMB)(HBP)
       -against-
                                      :    OPINION
PRICEWATERHOUSE-COOPERS LLP,               AND ORDER
et al.,                               :

                    Defendants.       :

----------------------------------X


            PITMAN, United States Magistrate Judge:


I.   Introduction


            Defendant John A. Dore (the "Movant") moves to quash

the subpoena duces tecum issued by plaintiffs American Country

Holdings, Inc. ("ACHI") and Kingsway Financial Services, Inc.

("Kingsway") to non-party Great American Insurance Group ("Great

American"), ACHI's insurance provider.  For the reasons set forth

below, the motion to quash is granted in part and denied in part.

Great American and Dore are to provide a log of documents with-

held on the ground of privilege or work-product protection within

thirty (30) days of the date of this Order.


II.  Facts


            Kingsway and ACHI commenced this action against Martin

L. Solomon, Edwin W. Elder, William J. Barrett, Wilmer J. Thomas,

Jr., Karla Violetto ("Director Defendants"), John A. Dore, and

PricewaterhouseCoopers LLP ("PWC"), alleging securities fraud,

common law fraud and conspiracy in connection with Kingsway's

purchase of ACHI.  The plaintiffs allege that from 1999 through

2002 ("Relevant Period"), the defendants "fraudulently caused and

maintained an inflated stock price of ACHI through their actions

. . . ." (Plaintiff's Third Amended Complaint, dated April 28

2005, (Plf.'s Complaint) at ¶ 4).  Plaintiffs' allegations are

set forth in detail in an opinion issued by the Honorable Richard

M. Berman, United States District Judge, Kingsway Fin. Servs.,

Inc. v. PricewaterhouseCoopers, LLP, et al., 420 F. Supp.2d 228

(S.D.N.Y. 2005) (granting defendants' motion to dismiss in part

and denying defendants' motion to dismiss in part); familiarity

with this decision is assumed.  The plaintiffs have settled their

claims against the Director Defendants, leaving Dore and PWC as

the only defendants remaining in this action (Docket Item 291).

A.   The D & O Insurance Policy

        In connection with their defense of this action, the

Director Defendants and John A. Dore have sought reimbursement

for their legal fees, costs, and expenses both from plaintiffs,

pursuant to indemnification agreements[1], and from Great American

---

[1] To date, plaintiffs have advanced a substantial portion of
defendant John A. Dore's legal expenses pursuant to an April 2,
(continued...)

pursuant to a directors and officers insurance policy issued to ACHI (Great American Directors', Officers', Insured Entity and Employment Practices Liability Insurance, Policy No. DOL5741496 (the "D & O Insurance Policy"), attached as Ex. D to the Morgan Decl.). The D & O Insurance Policy, which has a limit of 10 million dollars, was issued by Great American to ACHI on July 25, 1997 and expired on April, 5, 2005 (<u>see</u> "Declarations", attached to the D & O Insurance Policy). The section of the D & O Insurance Policy relevant to the dispute before me provides that:

> A. The **Insureds** [ACHI] shall not incur Costs of Defense or admit liability, offer to settle, or agree to any settlements in connection with any **Claim** without the express prior written consent of the **Insurer** [Great American], which consent shall not be unreasonably withheld. The **Insureds** shall provide the **Insurer** with all information and particulars it may reasonably request in order to reach a decision as to such consent. Any **Loss** resulting from any admission of liability, agreement to settle, or **Costs of Defense** incurred prior to the **Insurer's** consent shall not be covered hereunder.
>
> B. The **Insureds**, and not the **Insurer**, have the duty to defend all **Claims**, provided that the **Insureds** shall only retain counsel as is mutually agreed upon with the **Insurer**.

---

[1](...continued)
2002 Indemnification Agreement (See Order of Judge Flynn of the Circuit Court of Cook County, Illinois, 03 CH 8189, dated June 27, 2005, attached as Ex. A to the Declaration of Alaina M. Morgan, Esq., dated February 1, 2008 ("Morgan Decl."); Memorandum of Law in Opposition to Def. John A. Dore's Motion for a Protective Order Regarding Plaintiffs' Subpoena to Great American Insurance Group ("Plf.'s Mem.") at 2).

C.  The **Insurer** shall at all times have the right, but
not the duty, to associate with the **Insureds** in the
investigation, defense or settlement of any **Claim** to
which coverage under this Policy may apply.

D.  If a **Claim** made against any **Insured** includes both
covered and uncovered matters or is made against any
**Insured** and others, the **Insured** and the **Insurer** recog-
nize that there must be an allocation between insured
and uninsured **Loss.**  The **Insureds** and the **Insurer** shall
use their best efforts to agree upon a fair and proper
allocation between insured and uninsured **Loss.**

E.  The **Insurer** shall advance **Costs of Defense** prior to
the final disposition of any **Claim**, provided such **Claim**
is covered by the policy.  Any advancement shall be on
the condition that . . . .

(D & O Insurance Policy at Section VII, p. 6)(bold in original).

To date, Great American has advanced approximately 5.7 million

dollars[2] to cover the legal fees of the Director Defendants in

this action and has initiated a separate interpleader action

seeking to resolve the competing demands of the Director Defen-

dants and Dore to the 4.3 million dollars of coverage remaining

under the D & O Insurance Policy (First Amended Interpleader

Complaint, Docket Item 7, in <u>Great American Insurance Co. v.</u>

<u>Martin L. Solomon, et al.</u>, 07 Civ. 6498 (RMB), (S.D.N.Y. filed

Sept. 17, 2007), ("Interpleader Action") at ¶ 20).

---

[2]Defendant John A. Dore has also filed a small-claims action
against Great American seeking reimbursement of yet unpaid
attorneys' fees, costs, and expenses incurred in the defense of
this action (<u>James A. Dore v. Great American Insurance Co.</u>, 08-
M1-16575).  This action was dismissed on September 09, 2008 by
Judge Pamela E. Hill Veal of the Illinois Circuit Court of Cook
County (<u>See</u> Order to Dismiss, dated September 09, 2008, attached
to the letter of Scott O. Reed, dated September 10, 2008).

The present discovery dispute arises out of plaintiffs'
subpoena duces tecum to Great American (Notice of Subpoena
("Subpoena") dated November 8, 2007, attached as Ex. A to the
Declaration of Scott Golinkin, Esq., dated November 30, 2007
("Golinkin Decl.")).  This subpoena seeks production of:

> (1)  Any and all documents received from any of the
> Defendants, or received from anyone on their behalf,
> including but not limited to their counsel, agents,
> representatives or other persons acting on behalf of
> Defendants.
>
> (2)  Any and all documents sent by Great American to
> any of the Defendants, or to anyone acting on their
> behalf, including but not limited to their counsel,
> agents, representatives or other persons acting on
> behalf of Defendants.
>
> (3) Any and all claims files relating to American
> Country Holdings Inc.

(Subpoena: "Documents Requested").  Plaintiffs served the sub-
poena on Great American on November 9, 2007.  Scott Golinkin,
Esq., counsel for defendant John A. Dore, received the subpoena
on November 16, 2007 (Golinkin Decl. at ¶ 3).  The copy of the
subpoena that was sent to counsel for the Director Defendants was
postmarked November 13, 2007 (Golinkin Decl. at ¶ 4), four days
after the service of Great American.

B.  <u>Procedural History</u>

On November 30, 2007, John A. Dore moved to quash the
subpoena to Great American (Docket Item 228) and on December 7,
2007, he applied for a protective Order.  Plaintiffs opposed this

motion by a letter, dated December 3, 2007, (Docket Item 233) in which they argued only that I lacked jurisdiction over the motion to quash because the subpoena had been issued by the United States District Court for the Northern District of Illinois. On December 11, 2007, I determined that, pursuant to Fed.R.Civ.P. 26(c), jurisdiction was proper in this court because the action was pending here, and granted Dore's motion to quash because plaintiffs' sole argument in opposition to the motion was lack of jurisdiction (Docket Item 245). The plaintiffs appealed my December 11, 2007 Order, and on January 25, 2008 the Honorable Richard M. Berman reversed and remanded the matter to me in order to permit plaintiffs to assert additional arguments concerning Dore's application for a protective order (Docket Item 250).

III.  <u>Analysis</u>

Dore moves to quash the subpoena[3] issued by plaintiffs to Great American on the following three grounds: (1) plaintiffs have violated the prior notice requirement of Rule 45(b)(1); (2) the subpoena is "over-broad and seeks irrelevant material"; (3) the subpoena seeks documents protected by the attorney-client privilege or the work-product privilege (Defendant John A. Dore's Motion to Quash Plaintiff's Subpoena to Great American Insurance Group, dated November 30, 2007 ("Def.'s Mem.") at 3, 4, 8, 9).

---

[3]As a threshold issue, plaintiffs contend that Dore lacks standing to challenge the subpoena because it was issued to a third party, Great American.  A party generally lacks standing to quash a subpoena directed to a non-party unless the party claims some personal right or privilege with regard to the documents sought.  <u>Haywood v. Hudson</u>, CV-90-3287 (CPS), 1993 WL 150317 at *4 (E.D.N.Y. April 23, 1993), <u>citing</u> <u>Brown v. Braddick</u> 595 F.2d 961, 967 (5th Cir. 1979); <u>Carey v. Berisford Metals Corp.</u>, 90 Civ. 1045 (JMC), 1991 WL 44843 at *8 (S.D.N.Y. March 28, 1991); 9A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice & Procedure</u> §2459 n.7 at 436 (3d ed. 2008).  Even if I ignore the fact that Great American has also objected to the subpoena (Letter of Peter J. Prommer, Esq., dated November 21, 2007, attached as Ex. F to the Morgan Decl.), Dore would still have standing to challenge the subpoena because he has asserted that the requested documents are privileged (Def.'s Mem. at 5-8).  Dore does not have standing, however, to challenge the subpoena with respect to those documents that only reflect communications between the Director Defendants and Great American and do not include any shared attorney work product.

A.  Prior Notice of the Subpoena

        Dore contends that the subpoena should be quashed
because plaintiffs failed to provide notice of the subpoena prior
to its service as required by Fed.R.Civ.P. 45(b)(1).  Rule
45(b)(1) states that: "[i]f [a] subpoena commands the production
of documents, electronically stored information, or tangible
things or the inspection of premises before trial, then before it
is served, a notice must be served on each party."  Thus, there
is no question that Rule 45(b)(1) requires a party issuing a
subpoena to serve "prior notice" to all of the other parties to
the litigation.  See, e.g., Zinter Handling, Inc. v. Gen. Elec.
Co., 04-CV-500 (GLS/DRH), 2006 WL 3359317 at *2 (N.D.N.Y. Nov.
16, 2006); Fox Indus. Inc. v. Gurovich, CV 03-5166 (TCP)(WDW),
2006 WL 2882580 at *11 (E.D.N.Y. Oct. 6, 2006); Cootes Drive LLC
v. Internet Law Library, 01 Civ. 0877 (RLC), 2002 WL 424647 at *1
(S.D.N.Y. Mar. 19, 2002); Schweizer v. Mulvehill, 93 F. Supp.2d
376, 441 (S.D.N.Y. 2000).  As the Advisory Committee notes
explain, the purpose of such notice is "to afford other parties
an opportunity to object to the production or inspection, or to
serve a demand for additional documents or things . . . ."  1991
Advisory Committee Notes to Fed.R.Civ.P. 45(b)(1).

        The evidence in the record indicates that defendant
John Dore was served one day after Great American and the Direc-

8

tor Defendants were served approximately seven days after Great American was subpoenaed (Golinkin Decl. at ¶¶ 3, 4). Thus, the service here clearly did not comply with Rule 45's prior notice requirement. Some courts have quashed subpoenas on that basis alone. See, e.g., Murphy v. Bd. of Educ. of Rochester City Sch. Dist., 196 F.R.D. 220, 222, 226-28 (W.D.N.Y. 2000) (sanctioning the attorney for issuing 12 third-party subpoenas without giving notice to opposing counsel); Schweizer v. Mulvehill, supra, 93 F. Supp.2d at 412 (stating that a subpoena, issued without prior notice, would properly be quashed). The majority approach, however, requires that the aggrieved party demonstrate some form of prejudice resulting from the failure to provide advance notice. See, e.g., Fox Indus. Inc. v. Gurovich, supra, 2006 WL 2882580 at *11 (denying the motion to quash because the defendants were not prejudiced by plaintiff's failure to provide prior notice); Zinter Handling, Inc. v. Gen. Elec. Co., supra, 2006 WL 3359317 at *2 (same); Seewald v. IIS Intelligent Information Sys., Ltd., 95 CV 824 (FB), 1996 WL 612497 at *5 (E.D.N.Y. Oct. 16, 1996) (denying motion to quash because the defendants learned about the document request prior to the third party's production of the documents and consequently had sufficient time to challenge the subpoena). Dore did not suffer any prejudice from plaintiffs' failure to comply with Rule 45(b)(1). The only argument that Dore raises in this regard is that the lack of

prior notice "<u>could</u> have resulted in Great American producing documents before they had an opportunity to challenge the sub-poena" (Def.'s Mem. at 4). This is not a sufficient showing of prejudice to justify quashing the subpoena; Great American objected to the subpoena and Dore was able to file this motion to quash before any documents were produced.

Accordingly, plaintiffs' failure to serve the subpoena in conformity with the requirements of Fed.R.Civ.P. 45 is not a sufficient basis, by itself, to quash the subpoena.

### B.   <u>Relevance of the Requested Documents</u>

Dore also contends that the subpoena should be quashed because the documents it seeks are "irrelevant and over-broad" (Def.'s Mem. at 8).

Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery and permits discovery of materials that are relevant to "any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admis-sible evidence." Fed.R.Civ.P. 26(b)(1). "This obviously broad rule is liberally construed." <u>Daval Steel Prods. v. M/V</u> <u>Fakredine</u>, 951 F.2d 1357, 1367 (2d Cir. 1991). "[T]he overriding policy is one of disclosure of relevant information in the interest of promoting the search for truth in a federal question

10

case." Burke v. New York City Police Dep't, 115 F.R.D. 220, 225
(S.D.N.Y. 1987); see also Condit v. Dunne, 225 F.R.D. 100, 105
(S.D.N.Y. 2004) (stating that "[a]lthough not unlimited, rele-
vance, for purposes of discovery, is an extremely broad con-
cept.").

"The party issuing the subpoena must demonstrate that
the information sought is relevant and material to the allega-
tions and claims at issue in the proceedings." Night Hawk Ltd.
v. Briarpatch Ltd, LP, 03 Civ. 1382 (RWS), 2003 WL 23018833 at *8
(S.D.N.Y. Dec. 23, 2003); citing Salvatore Studios Int'l v.
Mako's Inc., 01 Civ. 4430 (BSJ)(DF), 2001 WL 913945 at *1
(S.D.N.Y. Aug. 14, 2001) ("Rule 26(b)(1) of the Federal Rules of
Civil Procedure restricts discovery to matters relevant to the
claims and defenses of the parties.  Here, the burden is on
Mako's [who issued the subpoena] to demonstrate relevance.");
accord Bridgeport Music Inc. v. UMG Recordings, Inc., 05 Civ.
6430 (VM)(JCF), 2007 WL 4410405 at *2 (S.D.N.Y. Dec 17, 2007);
Quotron Sys., Inc. v. Automatic Data Processing, Inc., 141 F.R.D.
37, 41 (S.D.N.Y. 1992); Culligan v. Yamaha Motor Corp., 110
F.R.D. 122, 125 (S.D.N.Y. 1986).

Nevertheless, discovery is not boundless, and a court
may place limits on discovery demands that are "unreasonably
cumulative or duplicative," or in cases "where the burden or
expense of the proposed discovery outweighs its likely benefit .

. . ." Fed.R.Civ.P. 26(b)(2)(C)(i)-(iii).  Once the party issuing
the subpoena has demonstrated the relevance of the requested
documents, the party seeking to quash the subpoena bears the
burden of demonstrating that the subpoena is over-broad, duplica-
tive, or unduly burdensome.  Sea Tow Int'l, Inc. v. Pontin, 246
F.R.D. 421, 424 (E.D.N.Y. 2007) ("The burden of persuasion in a
motion to quash a subpoena . . . is borne by the movant."),
quoting Jones v. Hirschfeld, 219 F.R.D. 71, 74-75 (S.D.N.Y.
2003).  The determination of whether a subpoena is unduly burden-
some turns, in part, on why the requested material is relevant.
United States v. Int'l Bus. Mach Corp., 83 F.R.D. 97, 104
(S.D.N.Y. 1979)(a court evaluating a motion to quash considers
"such factors as relevance, the need of the party for the docu-
ments, the breadth of the document request, the time period
covered by it, the particularity with which the documents are
described and the burden imposed."); Bridgeport Music Inc. v. UMG
Recordings, Inc., supra, 2007 WL 4410405 at *2; see also Concord
Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 50 (S.D.N.Y.
1996)("[t]o the extent a subpoena sweepingly pursues material
with little apparent or likely relevance to the subject matter it
runs the greater risk of being found overbroad and unreason-
able.")

1.  Documents & Communications
    <u>Unrelated to this Policy</u>

The plaintiffs seek the discovery of any and all "documents" or claims files in Great American's possession relating to ACHI or the defendants from January, 1997 to the present (Subpoena: "Definitions" and "Documents Requested"). Not only does the subpoena seek eleven years of documents but it is not even limited to the D & O policy at issue in this litigation. Instead, it seeks discovery of any prior or subsequent policies issued by Great American without indication of any relevance to this litigation.

Accordingly, the subpoena is quashed with regard to any claims files or communications between ACHI and Great American unrelated to the D & O Insurance Policy.

2.  Documents & Communications
    <u>Concerning the D & O Policy</u>

The plaintiffs argue that the documents and communications concerning the D & O Insurance Policy are relevant because "[i]f Dore made or transmitted statements of fact to Great American (or vice versa) about the events that occurred at ACHI during the period of time relevant to the acquisition, those statements are relevant to the litigation . . . ." (Plf.'s Mem. at 10). Plaintiffs also suggest that the communications may

provide proof of defendants' scienter (Plf.'s Mem. at 10). For purposes of analyzing the parties' positions, it is helpful to separate the documents at issue into three categories: (1) those communications which occurred from 1997 to 1999; (2) those communications which occurred during the Relevant Period, i.e., from January 1, 1999 to April 1, 2002, prior to the tender offer, and (3) communications after the tender offer on April 1, 2002.

### a. Documents and Communications from 1997 to 1999

The plaintiffs have not presented any grounds for the discovery of communications occurring prior to January 1, 1999, the beginning of the "Relevant Period" during which the defendants allegedly improperly inflated the price of ACHI stock (Plf.'s Complaint at ¶ 4, p. 3). Indeed, by definition, these documents could not contain "statements of fact . . . about the events that occurred at ACHI during the period of time relevant to the acquisition", and, could not therefore, be relevant (Plf.'s Mem. at 10).

Accordingly, Dore's motion to quash is granted with respect to any claim files or "documents" created prior to the start of the Relevant Period on January 1, 1999.

b.   Documents and Communications
                <u>from the Relevant Period</u>


        Dore next argues that the plaintiffs have failed to

present any rationale for the discovery of documents generated

during the Relevant Period.  According to Dore, any communica-

tions with Great American prior to the April 1, 2002 tender offer

should be contained within ACHI's files, which are presently in

plaintiff's possession.  While Great American's files for this

period may not contain anything that is not already in ACHI's

files, this fact alone is an insufficient ground on which to

quash the subpoena.  <u>See</u>, <u>e.g.</u>, <u>Burns v. Bank of America</u>, 03 Civ.

1685 (RMB)(JCF), 2007 WL 1589437 at *15 n.13 (S.D.N.Y. June 4,

2007) ("Even if Bank of America already possesses many of the

documents in question, this is not a bar to its taking discovery

in this matter."); <u>VNA Plus, Inc. v. Apria Healthcare Group,</u>

<u>Inc.</u>, Civ.A. 98-2138-KHV, 1999 WL 386949 at *6 (D. Kan. June 8,

1999) ("Asking for information already within the possession of

the party seeking the discovery does not of itself make the

interrogatory unduly burdensome or oppressive."), <u>citing</u> <u>Cook v.</u>

<u>Rockwell Int'l Corp.</u>, 161 F.R.D. 103, 105 (D. Colo. 1995); <u>Ft.</u>

<u>Washington Res., Inc. v. Tannen</u>, 153 F.R.D. 78, 79 (E.D. Pa.

1994) ("It is not a bar to the discovery of relevant material

that the same material may be in the possession of the requesting

party . . . ."); <u>Federal Deposit Ins. Corp. v. Renda</u>, 126 F.R.D.

                              15

70, 72 (D. Kan. 1989) ("Even if the plaintiffs are in possession of certain documents which they requested from the defendants, the plaintiffs are entitled to review those documents which are in the defendants' control."), aff'd, Federal Deposit Ins. Corp. v. Daily, No. 91-3035, 1992 WL 43488 at *1 (10th Cir. Mar. 3, 1992); see also 8 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2014 (3d ed. 2008).

Dore has raised no other arguments to support his motion to quash the discovery of communications during the "Relevant Period" and therefore has failed to meet his burden of demonstrating that the discovery is duplicative, irrelevant or would subject a non-party to undue burden.  Sea Tow Int'l, Inc. v. Pontin, supra, 246 F.R.D. 421, 424; Jones v. Hirschfeld, supra, 219 F.R.D. 71, 74-75.

### c.  Documents and Communications After the Tender Offer on April 1, 2002

To the extent they contain statements by a defendant concerning the subject matter of this action, communications between Dore and Great American after the tender offer of April 1, 2002 may provide some evidence of materiality or scienter. Therefore, with respect to these documents, the subpoena appears reasonably calculated to lead to the discovery of admissible evidence.  Dore has presented no arguments regarding the irrele-vance of these communications.  In addition, Dore has not pre-

sented any evidence that discovery of these documents would be
duplicative or unduly burdensome.

Accordingly the motion to quash documents from January
1, 1999 to the present, on the ground of irrelevance, is denied.

        C.  Application of the
            Attorney-Client Privilege
            to the Requested Documents

Dore also contends that many of the subpoenaed docu-
ments incorporate "information obtained from Dore in the course
of seeking legal advice and thus production of these documents
would invade the attorney-client privilege" (Def.'s Mem. at 7).

The elements of the attorney-client privilege are well-
settled:

> The [attorney-client] privilege applies only if (1) the
> asserted holder of the privilege is or sought to become
> a client; (2) the person to whom communication was made
> (a) is a member of the bar of a court, or his subordi-
> nate and (b) in connection with this communication is
> acting as a lawyer; (3) the communication relates to a
> fact of which the attorney was informed (a) by which
> client (b) without the presence of strangers (c) for
> the purpose of securing primarily either (i) an opinion
> on law or (ii) legal services or (iii) assistance in
> some legal proceeding, and not (d) for the purpose of
> committing a crime or tort; and (4) the privilege has
> been (a) claimed and (b) not waived by the client.

Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160
F.R.D. 437, 441 (S.D.N.Y. 1995), quoting United States v. United
Shoe Mach. Corp., 89 F. Supp. 357, 358-59 (D. Mass. 1950).  As
the party asserting the privilege, Dore has the burden of estab-

lishing through affidavits or other evidentiary material the applicability of the attorney-client privilege to the document in dispute.  See <u>von Bulow v. von Bulow</u>,  811 F.2d 136, 144 (2d Cir. 1987) ("The burden is on the party claiming the protection of a privilege"); <u>Bowne of New York City, Inc. v. AmBase Corp.</u>, 150 F.R.D. 465, 470 (S.D.N.Y. 1993) (citing cases).

 "An insured may communicate with its insurer for a variety of reasons, many of which have little to do with the pursuit of legal representation or the procurement of legal advice."  <u>In re Pfizer Inc. Sec. Litig.</u>, 90 Civ. 1260 (SS), 1993 WL 561125 at *7 (S.D.N.Y. Dec. 23, 1993).  Dore contends that the subpoenaed documents include "information obtained from Dore in the course of seeking legal advice", reports prepared by counsel, and recommendations for further handling of the litigation (Def.'s Mem. at 5, 6).  The subpoenaed materials that include this information may indeed be privileged.  <u>See</u>, <u>e.g.</u> <u>American Special Risk Ins. Co. v. Greyhound Dial Corp.</u>, 90 Civ. 2066 (RPP), 1995 WL 442151 at *2 (S.D.N.Y. July 26, 1995) (holding that the privilege extends to the disclosure by an insured to its insurer of "facts required to show potential liability of the insured"), <u>citing</u> <u>Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp.</u>, 5 F.3d 1508, 1515 (D.C. Cir. 1993).

1.  Waiver and the Common Interest Rule

         Plaintiffs contend that even if the subpoenaed

documents contain or reflect privileged attorney-client

communications, the privilege has been waived because Dore shared

these documents with a third party, Great American (Plf.'s Mem.

at 5).  Dore responds that the privilege has not been waived by

disclosure to Great American because Dore and Great American

share a "common interest" in defending this action (Def.'s Mem.

at 8).

         Courts in this Circuit do recognize the "common

interest rule."  The common interest rule is not an independent

privilege; rather, it is a limited exception to the general rule

that the attorney-client privilege is waived when a protected

communication is disclosed to a third party outside the attorney-

client relationship.  See Coregis Ins. Co. v. Lewis, Johs,

Avallone, Aviles & Kaufman, LLP, 01 CV 3844 (SJ), 2006 WL 2135782

at *15 (E.D.N.Y. July 28, 2006), citing Bruker v. City of New

York, 93 Civ. 3848 (MGC)(HBP), 2002 WL 484843 at *4 (S.D.N.Y.

Mar. 29, 2002); United States v. United Tech. Corp., 979 F. Supp.

108, 111 (D. Conn. 1997); see generally United States v.

Schwimmer, 892 F.2d 237, 243-44 (2d Cir. 1989).  The common

interest rule may also apply where multiple parties are

represented by multiple counsel so long as the parties share a

common interest in a legal matter.  Walsh v. Northrup Grumman
Corp., 165 F.R.D. 16, 18 (E.D.N.Y. 1996); Bank Brussels Lambert
v. Credit Lyonnais (Suisse) S.A., supra, 160 F.R.D. at 447.
Furthermore, "[t]he need to protect the free flow of information
from client to attorney logically exists whenever multiple
clients share a common interest about a legal matter."  Capra,
The Attorney-Client Privilege In Common Representations, 20 Trial
Lawyers Quarterly (Summer 1989) at 21.  Thus, it is not necessary
that there be actual litigation in progress for the common
interest rule to apply.  United States v. Schwimmer, supra, 892
F.2d at 244; United States v. Zolin, 809 F.2d 1411, 1417 (9th
Cir. 1987), vacated in part on other grounds, 842 F.2d 1135 (9th
Cir. 1988) (en banc), aff'd in part and vacated in part on other
grounds, 491 U.S. 554 (1989).  As insured and insurer, Dore and
Great American appear to have had a common interest with regard
to the underlying action at the time the subpoenaed
communications took place.  Coregis Ins. Co. v. Lewis, Johs,
Avallone, Aviles and Kaufman, LLP, supra, 2006 WL 2135782 at *15
(stating that the common interest rule "allows an insurer aligned
in interest with the insured to have access to privileged
communications between the insured and its counsel, without
breach of the attorney-client privilege."), citing N. River Ins.
Co. v. Colombia Cas. Co., 90 Civ. 9518 (MJL), 1995 WL 5792 at *4
(S.D.N.Y. Jan. 5, 1995); see also Lectrolarm Custom Sys., Inc. v.

Pelco Sales Inc., 212 F.R.D. 567, 571-72 (E.D. Cal. 2002)
(protecting communications between an insured and his/her insurer
due to the parties' common interest in the underlying lawsuit
despite the fact that the insurer was proceeding under a
reservation of rights).

Plaintiffs, however, argue that there can be no
cognizable common interest in this case because: (1) "Great
American does not have a duty to defend these individual
defendants" (Plf.'s Mem. at 5) and (2) any common interest is
destroyed by the fact that Dore and Great American are now
adverse to one another in the Interpleader Action and in the
small claims action (Plf.'s Mem. at 5).  Plaintiffs' first
argument is belied by the D & O Insurance Policy itself; the
Policy expressly provides that "[t]he insurer shall advance Costs
of Defense prior to the final disposition of any claim, provided
such claim is covered by the policy" (D & O Insurance Policy,
Section VII(E)).  In addition, in the Interpleader Action, Great
American admits that John A. Dore, Edwin W. Elder, Martin L.
Solomon, William J. Barrett and Karla Violetto are all "Insured
Persons" under the policy (Interpleader Complaint at ¶¶ 8-13).

Plaintiffs second argument is equally unavailing.  The
fact that the parties are currently adverse in a related action
does not alter the fact that Dore and Great American shared a
common interest at the time the communications were made.  In re

United Mine Workers of Am. Employee Ben. Plans Litig., 159 F.R.D.
307, 313 (D.D.C. 1994) ("[T]he common interest rule is concerned
with the relationship between the transferor and the transferee
at the time that the confidential information is disclosed. The
fact that the parties' interests have diverged over the course of
the litigation does not necessarily negate the applicability of
the common interest rule."); see also In re Grand Jury Subpoenas,
89-3 and 89-4, John Doe 89-129, 902 F.2d 244, 249 (4th Cir. 1990)
(applying the joint defense rule to documents generated before
the common interest developed between the parent company and its
future subsidiary and explaining that the common interest rule
focuses on the circumstances at the time of the disclosure).

        Generally, the determination of whether the attorney-
client privilege attaches to an insured-insurer communication
turns on the nature and purpose of the communication.

              Certainly, where the insured communicates with the
              insurer for the express purpose of seeking legal advice
              with respect to a concrete claim, or for the purpose of
              aiding an insurer-provided attorney in preparing a
              specific legal case, the law would exalt form over
              substance if it were to deny application of the
              attorney-client privilege. However, a statement
              betraying neither interest in, nor pursuit of, legal
              counsel bears only the most attenuated nexus to the
              attorney-client relationship and thus does not come
              within the ambit of the privilege.

In re Pfizer Inc. Sec. Litig., supra, 1993 WL 561125 at *7,
quoting Linde Thomson Langworthy Kohn & Van Dyke P.C. v.
Resolution Trust Corp., supra, 5 F.3d at 1515; Lectrolarm Custom

22

<u>Sys., Inc. v. Pelco Sales Inc.</u>, <u>supra</u>, 212 F.R.D. at 571-73

(granting defendant's motion for a protective order with respect

to communications between defendant and insurer relating to the

claims and defenses in the underlying lawsuit but declining to

find a common interest with respect to communications relating to

coverage dispute between the defendant and insurer); <u>see</u> <u>also</u>

<u>Aiena v. Olsen</u>, 194 F.R.D. 134, 135 (S.D.N.Y. 2000) (holding that

communications between defendants and their insurers relating to

a coverage dispute between them were not privileged and

distinguishing this situation from one in which the

communications were for the defense of the insured).  Therefore,

communications between defendants and Great American that were

intended to be in furtherance of their "joint defense" remain

privileged because both Great American and defendants have a

common interest in successfully defending or settling[4] any claims

in this action.  These include statements for the purpose of

obtaining or providing legal assistance.  <u>See</u> <u>American Special</u>

<u>Risk Ins. Co. v. Greyhound Dial Corp.</u>, <u>supra</u>, 1995 WL 442151 at

*2 (holding that disclosures to an insurer "in pursuit of

representation" remain privileged).  Any communications, however,

---

[4]Indeed, under the policy, defendants are required to
"provide the Insurer with all information and particulars it may
reasonably request" prior to reaching a decision regarding
settlement (D & O Insurance Policy Section VII, A).

relating to the parties' ongoing dispute regarding coverage are
not privileged and must be disclosed.

      D.   Application of the
           Work-Product Privilege
           <u>To the Requested Documents</u>

      Dore also contends that the subpoena requires the
disclosure of documents protected as attorney work-product,
including "reports prepared by their counsel, containing analyses
of this action, including primarily the mental impressions and
legal strategy of counsel and recommendations for further
handling of this litigation" (Def.'s Mem. at 5).

      In contrast to the attorney-client privilege, which is
intended to encourage full disclosure by the client, the work-
product doctrine "is intended to preserve a zone of privacy in
which a lawyer can prepare and develop legal theories and
strategy 'with an eye toward litigation,' free from unnecessary
intrusion by his adversaries." <u>United States v. Adlman</u>, 134 F.3d
1194, 1196 (2d Cir. 1998), <u>quoting</u> <u>Hickman v. Taylor</u>, 329 U.S.
495, 511 (1947). The work-product doctrine protects the
ruminations by an attorney or party concerning the strategy to be
followed in a litigation. <u>In re Grand Jury Subpoena Dated Oct.
22, 2001</u>, 282 F.3d 156, 161 (2d Cir. 2002); <u>In re Steinhardt
Partners, L.P.</u>, 9 F.3d 230, 234 (2d Cir. 1993); <u>Feacher v.
Intercontinental Hotels Group</u>, 06-CV-0877 (TJM/DEP), 2007 WL

3104329 at *4 (N.D.N.Y. Oct. 22, 2007).[5]  Like the attorney-
client privilege, the party asserting the protection of the work-
product doctrine bears the burden of proof.  In re Grand Jury
Subpoena Dated Dec. 19, 1978, 599 F.2d 504, 510 (2d Cir. 1979);
Garnier v. Illinois Tool Works, Inc., 04 Civ. 1825 (NGG)(KAM),
2006 WL 1211201 at *1 (E.D.N.Y. May 4, 2006).

"[T]hree conditions must be met in order to earn work
product protection.  The material must (1) be a document or
tangible thing, (2) that was prepared in anticipation of
litigation, and (3) was prepared by or for a party, or by or for
his representative."  In re Grand Jury Subpoenas Dated Dec. 18,
1981 & Jan. 4, 1982, 561 F. Supp. 1247, 1257 (E.D.N.Y. 1982);
accord Weinhold v. Witte Heavy Lift, Inc., 90 Civ. 2096 (PKL),
1994 WL 132392 at *2 (S.D.N.Y. April 11, 1994); 2 Michael C.
Silberberg, Edward M. Spiro, Civil Practice in the Southern
District of New York, § 15.04 at 15-13 -- 15-14 (2d ed. 2003).

The Second Circuit has explained that the second
element of this test does not limit the doctrine to documents
prepared primarily or exclusively to assist in litigation:

The text of Rule 26(b)(3) does not limit its protection
to materials prepared to assist at trial.  To the

---

[5]Although most of the cases discuss the work-product
doctrine as affording counsel privacy with respect to the
development of his or her strategy, the work-product doctrine
also applies to documents created by a party.  In re Grand Jury
Subpoenas Dated Dec. 18, 1981 & Jan. 4, 1982, 561 F. Supp. 1247,
1257 (E.D.N.Y. 1982).

> contrary, the text of the Rule clearly sweeps more
> broadly.  It expressly states that work-product
> privilege applies not only to documents "prepared . . .
> for trial" but also those prepared "in anticipation of
> litigation."  If the drafters of the Rule intended to
> limit its protection to documents made to assist in
> preparation for litigation, this would have been
> adequately conveyed by the phrase "prepared . . . for
> trial."  The fact that documents prepared "in
> anticipation of litigation" were also included confirms
> that the drafters considered this to be a different,
> and broader category.  Nothing in the Rule states or
> suggests that documents prepared "in anticipation of
> litigation" with the purpose of assisting in the making
> of a business decision do not fall within its scope.

United States v. Adlman, supra, 134 F.3d at 1198-99.  Thus, the

appropriate inquiry regarding the second element of the test is

whether "in light of the nature of the document and the factual

situation in the particular case, the document can fairly be said

to have been prepared or obtained because of the prospect of

litigation."  United States v. Adlman, supra, 134 F.3d at 1202,

quoting 8 Charles Alan Wright & Arthur R. Miller, Federal

Practice & Procedure § 2024 at 343 (3d ed. 2008).  Recognizing

that documents may be created for more than one purpose, the

threshold issue as to the applicability of work-product

protection has been described as requiring an inquiry into "the

primary motivational purpose behind the creation of the

document."  United States v. Davis, 636 F.2d 1028, 1040 (5th Cir.

1981); accord Binks Mfg. Co. v. Nat'l Presto Indus., Inc., 709

F.2d 1109, 1119 (7th Cir. 1983), quoting Janicker v. George

Washington Univ., 94 F.R.D. 648, 650 (D.D.C. 1982); Barrett v.

U.S. Banknote Corp., 91 Civ. 7420, 1992 WL 367117 at *2-3
(S.D.N.Y. July 6, 1992); Hardy v. New York News, Inc., 114 F.R.D.
633, 644 (S.D.N.Y. 1987).

    1.  Waiver

       Plaintiffs argue, in opposition to the motion to quash
the subpoena, that any work-product protection that attached to
the requested documents has been waived by disclosure to Great
American.

       Work-product protection may be waived by voluntary
disclosure to a party outside the privileged relationship.  In re
Steinhardt Partners, L.P., supra, 9 F.3d. at 235.  Work-product
protection, however, is only waived "when the disclosure is to an
adversary or materially increases the likelihood of disclosure to
an adversary."  ECDC Envtl., L.C. v. N.Y. Marine & Gen'l Ins.
Co., 96 Civ. 6033 (BSJ)(HBP), 1998 WL 614478 at *4 (S.D.N.Y. June
4, 1998), citing In re Steinhardt Partners, L.P., supra, 9 F.3d
at 234-35; In re Crazy Eddie Sec. Litig., 131 F.R.D. 374, 379
(E.D.N.Y. 1990) ("[T]he [work-product] privilege protects
information 'against opposing parties, rather than against all
others outside a particular confidential relationship' . . . .
Counsel may therefore share work product . . . with those having
similar interests in fully preparing litigation against a common
adversary.").  In this case, disclosure of materials to an

27

insurer does not waive the work-product protection because such disclosure does not "materially increase the likelihood of disclosure to an adversary." See, e.g., In re Pfizer Inc. Sec. Litig., supra, 1993 WL 561125 at *8 (holding that "disclosure of work product by an insurer to an insured does not waive work product privilege"); see also Chaiken v. VV Publishing Corp., supra, 1994 WL 652492 at *2.

E.  Privilege Log

It is impossible at this time, however, to assess the applicability of either the attorney-client privilege or the work-product doctrine to any of the subpoenaed documents on the basis of the sweeping statement by Dore that "the subpoena requires privileged . . . matter and no exception or waiver applies" (Def.'s Mem. at 5).

A party withholding documents on the basis of the attorney client privilege or work-product protection bears the burden of producing an index of the documents being withheld.

> A person withholding subpoenaed information under a
> claim that it is privileged or subject to protection as
> trial-preparation material must . . . describe the
> nature of the withheld documents, communications, or
> tangible things in a manner that, without revealing
> information itself privileged or protected will enable
> the parties to assess the claim.

Fed.R.Civ.P. 45(d)(2)(A); see also Local Civil Rule
26.2(a)(2)(A).  Neither Great American nor Dore have produced
such an index.

As I explained in an earlier opinion in this matter,
"[w]here a party fails to provide an index of withheld documents
in a timely manner, any potentially applicable privilege is
ordinarily waived."  <u>Kingsway Fian. Servs., Inc. v.
Pricewaterhouse-Coopers, LLP</u>, 03 Civ. 5560 (RMB)(HBP), 2006 WL
1295409 at *1 (S.D.N.Y. May 10, 2006) (collecting authorities).
I continue to believe that this is the better view.  Although
there is authority reaching a contrary result and limiting the
remedy to the belated preparation of the index of withheld
documents, I do not find those cases persuasive.  "Limiting the
remedy to the belated preparation of a privilege log effectively
tells practitioners they can flout the [Federal Rules of Civil
Procedure] and incur no sanction other than an Order directing
compliance with the rules."  <u>PKFinans Int'l Corp. v. IBJ Schroder
Leasing Corp.</u>, <u>supra</u>, 1996 WL 525862 at *4.  Federal Courts would
quickly grind to a halt if litigants were free to ignore the
requirements of the Federal Rules of Civil Procedure in the
absence of an order directing them to comply with the Rules.  <u>See
generally</u> 2 Michael C. Silberberg & Edward M. Spiro, <u>Civil
Practice in the Southern District of New York</u> § 22:12 at 22-33
(2d ed. 2004) ("[T]he cases imposing waiver appear to express the

better view of the appropriate remedy in the event a party fails to timely provide the privilege list.").

Nevertheless, there are factors present here that mitigate against this sanction.  Dore is the party asserting privilege or work-product protection with respect to documents in the physical possession of Great American; with respect to this discovery dispute, he is the real party in interest.  There is no evidence currently in the record establishing that Dore has copies of all of the responsive documents in Great American's possession which may be privileged or subject to work-product protection, nor is there evidence to sustain an inference that Dore even has access to Great American's files.  Thus, there is no basis for concluding that Dore could have prepared an index in a timely manner if he had sought to do so.

Under these circumstances, I conclude that a finding of waiver is inappropriate because it would penalize Dore for failing to do something that it appears he was incapable of doing in timely manner.  Rather, I direct that Great American, and Dore, collectively, produce an index of all documents withheld on the ground of privilege within thirty days of the date of this Order.

IV.  Conclusion

        For the aforementioned reasons, Dore's motion to quash
the subpoena to Great American is granted with respect to (1)
claims files and documents unrelated to D & O policy #DOL5741496
and (2) communications prior to the beginning of the Relevant
Period on January 1, 1999.  Dore's motion to quash with respect
to all of the other communications is denied except to the extent
Great American or Dore, assert the attorney-client privilege or
work-product protection.  Great American and Dore are to provide
a log of documents withheld on the grounds of privilege or work-
product protection within thirty (30) days of the date of this
Order.  This Order is without prejudice to plaintiffs' right to
challenge any documents withheld on the grounds of privilege or
work-product protection.

Dated:  New York, New York
        October 2, 2008

                            SO ORDERED

                            _____
                            HENRY PITMAN
                            United States Magistrate Judge

Copies transmitted to:

Harold J. Ruvoldt, Esq.
Nixon Peabody LLP
437 Madison Avenue
New York, New York  10022-7001

William R. Maguire, Esq.
Jeffrey M. Greilsheimer, Esq.
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York  10004

Eric J. Marler, Esq.
Karen A. Reardon, Esq.
Scott O. Reed, Esq.
Reardon Golinkin and Reed
208 South LaSalle Street
Chicago, Illinois  60604